**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABRAHIM FATA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-5019** |
| | : | |
| **LEHIGH COUNTY, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**HENRY, J.** **OCTOBER 15, 2026**

Abrahim Fata, a frequent *pro se* litigant in this Court who repeatedly raises claims concerning an alleged multi-state conspiracy that was formed in 2017 to cover up sex crimes against his minor children, filed this *pro se* civil action against numerous Defendants, asserting that this case arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595; and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1986. (*See* ECF No. 5 ("Am. Compl.") at 26-28.)[1] Fata seeks leave to proceed *in forma pauperis*. His claims in the instant case echo those raised in several previous civil actions and are based on the same series of events. As in those other cases, Fata's pleadings are predicated on his belief that a vast conspiracy exists to cover up crimes of sexual abuse against his minor children and push him to suicide. For the following reasons, the Court will grant Fata leave to proceed *in forma pauperis* and dismiss his Amended Complaint with prejudice because it is frivolous.

[1] Fata's Amended Complaint is the governing pleading in this case. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading," meaning "the most recently filed amended complaint becomes the operative pleading"); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings.").

## I. LITIGATION HISTORY AND FACTUAL ALLEGATIONS[2]

Since 2024, Fata has filed nine civil actions in this Court prior to filing the instant case.[3] In these cases, Fata has continually alleged the existence of a multi-state conspiracy formed in 2017 by a Christian religious based organization to cover up sex crimes inflicted on his minor children and push him to suicide (hereinafter referred to as the "2017 conspiracy"). *See generally* Civil Action Nos. 24-2402, 24-4862, 24-6934, 24-6935, 24-6936, 26-0828, 26-2185, and 26-3661.[4] Fata contends that the original members of the 2017 conspiracy have recruited numerous individuals throughout Pennsylvania, New Jersey, and Florida, including his family members, friends and acquaintances, private attorneys, state and federal law enforcement agencies and their employees, and state and county employees. In each of these cases, Fata

---

[2] The allegations set forth in this Memorandum are taken from Fata's Amended Complaint (ECF No. 5) and the publicly available dockets for prior civil actions filed by Fata, of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings). The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Where the Court quotes from *pro se* pleadings, punctuation, spelling, and capitalization errors will be cleaned up as needed.

Fata also filed more than 260 pages of exhibits. (ECF No. 6). With regard to the exhibits, "Judges are not like pigs, hunting for truffles buried in the record." *Doebler's Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (internal quotation marks and citation omitted). "While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021).

[3] Fata has also filed several cases in the District of New Jersey.

[4] Because Fata has a long history of filing frivolous pleadings in this Court, the undersigned entered an Order on August 24, 2026 in *Fata v. Lang*, No. 26-3661 (*see* ECF No. 15), directing Fata to show cause as to why a filing injunction should not be entered. Fata has recently filed a response to that Order, and the Court will address that issue by a separate memorandum and order in due course.

asserted claims against various individuals, many of whom are named as Defendants in the current Complaint, alleging that their involvement with the 2017 conspiracy resulted in a violation of his civil rights or otherwise caused him harm.

Thus far, none of Fata's cases have proceeded past statutory screening. *See Fata v. Ortiz*, No. 24-2402, ECF Nos. 14 & 15 (dismissing conspiracy claims as factually frivolous), *aff'd* No. 24-3033 (3d Cir.); *Fata v. Commonwealth of Pennsylvania*, No. 24-4861, ECF Nos. 33 & 34 (dismissing civil rights claims challenging probation violation conviction and sentence as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475 (1973)), *aff'd* No. 25-1889 (3d Cir.); *Fata v. Amantine*, No. 24-4862, ECF Nos. 26 & 27 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-2077 (3d Cir.); *Fata v. Lang*, No. 24-6934, ECF Nos. 7 & 8 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-1886 (3d Cir.); *Fata v. Delgado*, No. 24-6935, ECF Nos. 7 & 8 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-1888 (3d Cir.); *Fata v. Ortiz*, No. 24-6936, ECF Nos. 7 & 8 (dismissing conspiracy claims as factually frivolous, constitutional claims with prejudice for failure to state a claim, and state law claims without prejudice for lack of subject matter jurisdiction), *aff'd* No. 25-1887 (3d Cir.); *Fata v. Young*, No. 26-0828, ECF Nos. 8 & 9 (dismissing conspiracy claims as both factually frivolous and for failure to state a claim, and dismissing RICO and Right to Know Law claims for lack of jurisdiction), notice of appeal filed July 12, 2026 (ECF No. 13); *Fata v. Arcelly*, No. 26-2185,

ECF Nos. 8 & 9 (dismissing conspiracy and RICO claims as factually and legally frivolous, and dismissing due process claims for failure to state a claim), notice of appeal filed July 1, 2026 (ECF No. 11); *Fata v. Lang*, No. 26-3661, ECF Nos. 13 & 14 (dismissing complaint as frivolous), notice of appeal filed September 29, 2026 (ECF No. 17).

In Fata's most recent case, Civil Action No. 26-3661, it was evident that Fata believes nearly everyone he knows or meets is either an active participant in the 2017 conspiracy or has been influenced by it because his pleadings were fraught with numerous references to alleged conspiratorial activity and his beliefs that numerous individuals from Pennsylvania, New Jersey, and Florida were plotting against him or trying to prevent him from seeking "justice" for his children. (*See, e.g.,* Compl. (No. 26-3661, ECF No. 2) ¶ 31 ("At this time I already knew there was a conspiracy against me. . . . Everything made sense, the fights, the fatal accidents, the unemployment, the coincidents [sic]- everything. Nothing was a natural cause, NOTHING."); ¶ 72 (referencing family members who "have been in on the conspiracy" concerning his children, asserting that they "help create an illusion/gaslight that [he] is imagining things, or that [he's] crazy, and the one who is hurting [his] own children"); ¶¶ 74, 81(b) (averring that "society is trying to get [him] to commit suicide"); ¶¶ 75, 77 (explaining that there "was a conspiracy to cover" up abuse "by getting [him] arrested and to the extreme of trying to murder [him]"); ¶ 79 (alleging that the conspiracy "escalated to trying to get [him] killed. Judges, and many governments are involved").) Fata asserted several claims based on the 2017 conspiracy, including a civil RICO claim, a claim pursuant to the TVPRA, and conspiracy claims in violation of 42 U.S.C. §§ 1985 and 1986. (*Id.* at 48-50.)

In the instant case, Fata continues to assert the existence of the 2017 conspiracy, and this time he names nearly forty individuals as Defendants,[5] explaining in a twenty-three page, single-spaced narrative that he was "wrongfully incarcerated for 23 months"[6] at Lehigh County Jail and during that time there was "an attempt [of] voluntary manslaughter" against him and several individuals were "aiding suicide, or attempting to push [him] to suicide" and "get [him] wrongfully medicated . . . [and] keep [him] wrongfully imprisoned." (Am. Compl. at 3.) He claims that the "overall agenda was to continuously conspire to cover up sex crimes on [his] children and to manipulate [his] death." (*Id.*)

Fata's Amended Complaint is lengthy, confused, and reflects his continuing beliefs that others are trying to harm his children or are conspiring against him to provoke him "to commit suicide in order to cover up the sex crime on [his] son." *See, e.g.*, Am. Compl. at 5. It focuses solely on Fata's version of events from September 2022 through September 2025 as he attempted to pursue "justice" for his minor children. As with his most recent case, it is evident from his

---

[5] The named Defendants are: Lehigh County, Kyle A. Russell, Cliff Knappenberger, Edwin Arcelly, Robert "Bob" Krasley, Douglas Matte, Latifah Pittman, PrimeCare Medical, Inc., Chris Miller, Sergeant Cardone, C.O. Nieves, C.O. Charles, C.O. Roberts, Aracelly Delgado, Chris Delgado, Abigail Sheehan, Pamela Perez, Garrett Hall, Kelsey Krempesky, Jason Willis, Jill Herschman, Jason Kremus, Trina, C.O. Whittington, Ryan Arthur, Jacquline Mathews, Mayra Alamo, Crystal Salmond, and John/Jane Does 1-10 (Unknown Co-Conspirators). (Am. Compl. at 2-3.)

[6] Fata avers that he was on probation in Lehigh County and, while he was "pursuing justice" for his son, there was an "attempted voluntary manslaughter and [he] was also trafficked to lose custody of [his] daughter" and because his daughter was "sexually and morally corrupted" by her grandmother, he "pursued justice" in New Jersey. (Am. Compl. at 3-4.) Fata avers that "New Jersey Bayonne Police" attacked him on September 23, 2023, to "prevent justice" and he was charged with aggravated assault of an officer. (*Id.* at 4.) Public dockets reflect that Fata was incarcerated at LCJ in connection with probation revocation proceedings. *See Commonwealth v. Fata*, No. CP-39-CR-0004857-2017 (C.P. Lehigh). On January 16, 2024, Fata's probation was revoked, and he was sentenced to nine to twenty-three months imprisonment. *Id.* During the probation revocation proceedings, Fata was represented by Attorney Robert Sletvold. *Id.*

allegations that Fata believes nearly everyone he knows or meets is either an active participant in the 2017 conspiracy or has been influenced by it because the Amended Complaint is fraught with numerous references to alleged conspiratorial activity and his beliefs that numerous individuals from Pennsylvania and New Jersey, including, *inter alia*, police officers, prison staff, and inmates, are plotting against him or trying to prevent him from seeking "justice" for his children. (*See*, *e.g.*, Am. Compl., "Statement of the Claim" at ¶ 3(d) ("There was a conspiracy to get me to commit suicide in order to cover up the sex crime on my son . . . [and] my relatives were in on it because they covered up the sex crime on my son, and wanted to keep it covered up."); ¶ 13(a)(i) ("Then there was the attempts to emotionally hurt me which goes to the conspiracy to push me to suicide. The suicide conspiracy is being seen in every case filed in the federal jurisdiction, and states of PA and NJ."); ¶ 14(a)(ii) ("[T]he mothers of my 2 children Abigail Sheehan and Pamela Perez ha[ve] contribute[d] to the upcoming psychological and emotional attack, or keep my mind in a crisis state of being, which was part of the ongoing conspiracy to push me to suicide."); ¶ 17(a) (alleging that when a correctional officer told Fata that another inmate heard him talking to himself, Fata realized that "[t]his was the first issue [he] had with the jail inmates concerning the conspiracy."); ¶ 21(a) ("I instantly felt like it was a death threat because the covid records were mutlized [sic] and under another inmate's name as well."); ¶ 21(c) ("I knew for a fact they were trying to convince me to commit suicide. (The suicide conspiracy started in 2019 and followed me still here in the jail."); ¶ 23(a) (Fata explained during his mental health interview that "[his] rights are severely violated, and that there is a psychological attack against [him] to the extreme of getting death threats."); ¶¶ 24, 24(d) (On September 27, 2024, Fata received a "random call to go work in the kitchen . . . [where] there are knives. . .. So to prevent the conspiracy, [he] denied" the work and then later told a correctional officer that "she is trying to kill me, they are

trying to kill me."); ¶ 29(a) (Fata wrote "a secret letter to the nurse" to tell her that he was receiving threats, directing her "to inform someone outside . . . because C.O.s are in on it."); ¶ 29(d) ("You can easily tell who is targeting me from all the grievances."); ¶ 30(a) ("This proves the hidden agenda to push me to suicide is real."); ¶ 34 ("My case is really about defending myself from police oppression, and they are doing the oppression to cover up the sex crime that happened to my children."); ¶ 37 (Fata had a medical appointment prior to his release with a nurse and "believe[d] she was the one who injected [him] with covid back in 2020."); ¶ 39 ("Other C.O.s . . . played with my mail, wrongfully gave me 24's/lockdowns etc. contributing to the oppression.")).

Fata alleges claims of First Amendment retaliation and access to the courts, averring that "Defendants and their unknown co-conspirators took adverse, retaliatory actions to punish" him and block court access. (Am. Compl. at 26.) He explicitly claims that Sergeant Cardone "executed" a "retaliatory campaign by bypassing standard institutional work-assignment policies to force an irregular kitchen assignment." (*Id.*) This is the kitchen work assignment that Fata refused to accept on September 27, 2024, because he wanted "to prevent the conspiracy," noting that "there [were] knives" in the kitchen. (*Id.* at 14, ¶ 24.) When Fata told Cardone about the conspiracy and death threats against him, she "decided to take him to "3C the Hole." (*Id.*) Fata avers that Cardone's retaliatory campaign "was further advanced by outside Defendants . . . who coordinated with internal actors to manipulate [his] psychological state." (*Id.* at 26.)

Fata alleges a civil rights conspiracy under 42 U.S.C. § 1985(3), asserting that "Defendants and their unknown co-conspirators entered into an explicit, coordinated agreement to deprive [him] of his fundamental liberties, equal protection under the law, and due process rights." (*Id.* at 27.) He claims, *inter alia*, that the "conspiracy manifested through pre-arrest

tracking, the immediate imposition of a fraudulent suicide watch profile, the systematic tampering and shading of approved medical files, the deliberate matching of internal inmate dockets . . . to serve as threats, bad-faith flight-risk designations, and coordinated child alienation." (*Id.*) He avers that Cardone and C.O. Charles "attempted to engineer hostile cell placements to compromise [his] safety and silence his ongoing administrative grievances." (*Id.*) Fata contends that Cardone removed him from general population to place him "into the un-witnessed physical trap engineered by Defendant Charles within cell 3C." (*Id.*) He alleges that the physical trap awaiting him in 3C consisted of "2 pencils" and Charles's attempt to place another inmate in the same cell as Fata so they would fight. (*Id.* at 14-15, ¶¶ 24(a), 24(d)(i) "The point is the jail knows that fights are definitely brutal and leaving 2 pencils in the cell for a fight is instigating a murder.")

As in his prior cases before this Court, Fata asserts a civil RICO claim, claiming that Defendants "operated an association-in-fact institutional 'enterprise' engaged in a pattern of racketeering across state lines, utilizing mail fraud, identity manipulation, and systematic oppression to exploit and hold [him] captive." (*Id.* at 27.) He claims that he suffered injury when caseworkers Arcelly and Krasley "blocked his access" to bank accounts, "forcing his prolonged imprisonment past his minimum release dates."[7] (*Id.*) He also asserts a claim

[7] A similar claim was addressed by the Court in its June 25, 2026 Memorandum in *Fata v. Arcelly*, No. 26-2185, ECF No. 8. Specifically, Fata alleged that his due process rights under the Fourteenth Amendment were violated because these Defendants and others somehow caused him to remain improperly in custody rather than released on early parole at some point prior to the end of his maximum custodial sentence. (*Id.* at 20-22.) The Court concluded that because Fata had no constitutionally protected liberty interest in parole or any parole procedures, any due process violation based on Defendants' actions that allegedly led to his loss of parole failed. (*Id.* at 22.) (citing *Newman v. Beard*, No. 06-214, 2008 WL 2149605, at *2 (W.D. Pa. May 21, 2008) (claim for violation of due process based on deficient parole procedures in interview conducted by the Pennsylvania Board of Probation and Parole fails because there is no liberty interest in parole or any of its procedures); *Nellom v. Luber*, No. 02-2190, 2004 WL 816922, at *10 (E.D.

pursuant to the TVPRA, averring that Defendants "engaged in human trafficking and coercion by using extreme institutional force" that allegedly included "punitive isolation in cell 3C," "weaponized cell placements with hostile inmates," financial extortion and deactivation of communication devices. (*Id.* at 28.) He also alleges "food deprivation . . . to maintain unlawful physical control over [his] body," a "bait-and-switch bail collapse," and the coordination of a "cross-household blockade of all communication [with] his minor children, weaponizing parental alienation as an extreme psychological leverage tool to maintain absolute institutional control over [his] physical and mental state." (*Id.*) Finally, Fata alleges a conspiracy claim in violation of 42 U.S.C. § 1986 against at least ten unknown defendants, consisting of "turnkeys, administrative clerks, medical personnel, and correctional staff at Lehigh County Jail," asserting that they "had actual or constructive knowledge of the ongoing 42 U.S.C. § 1985(3) conspiracy" to violate his rights. (*Id.* at 28.) Fata seeks monetary damages, "criminal investigation and prosecution,"[8] and "a permanent injunction against the Defendants to cease all psychological and

---

Pa. Mar. 18, 2004) (due process claim based on parole procedures fails because there is no constitutionally protected liberty interest in either being granted parole or having a parole hearing).

[8] As Fata has been told on numerous prior occasions, he cannot compel a criminal investigation by filing a complaint with this Court. *See* Civ. A. Nos. 24-4862 (ECF No. 26 at 1, n.1); 24-6934 (ECF No. 7 at 1, n.1); 24-6935 (ECF No. 7 at 4-5, n.6); 24-6936 (ECF No. 7 at 4, n.6); 26-2185 (ECF No. 8 at 17-18); 26-3661 (ECF No. 12 at 7-8, n.3). "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution.") (citations omitted). Fata cannot compel a criminal investigation by filing a complaint with this Court because the United States District Courts have no authority to order any law enforcement agencies or prosecutors to initiate investigations or prosecutions. *See Wagner v. United States Gov't*, No. 23-1626, 2023 WL 3948820, at *1 (D.D.C. June 9, 2023) (citing *Otero v. U.S. Attorney General*, 832 F.2d 141, 141-42 (11th Cir. 1987); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982)). "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Wagner,* 2023 WL 3948820, at *1 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also Smith*

systematic oppression." (*Id.* at 28-29.)

## II. STANDARD OF REVIEW

The Court will grant Fata leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Section 1915(e)(2)(B)(i) requires the Court to dismiss a complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires dismissal if a complaint fails to state a claim upon which relief may be granted. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (*per curiam*) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327; *see also Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Smith v. N. Cambria Police,* No. 25-1273, 2025 WL 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A claim is legally baseless if it is "based on an indisputably

---

*v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

Whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). In assessing the Complaint, the Court is mindful of its obligation to liberally construe a *pro se* litigant's pleadings. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Fata's Complaint Will Be Dismissed

Fata's Complaint is frivolous. As repeatedly explained to Fata in his prior civil actions, his allegations that a multistate conspiracy has been formed to push him to suicide, frame him for crimes he did not commit, and cover up the sexual exploitation of his minor children, are wholly incredible and lack a basis in fact.[9] Accordingly, the Court will dismiss his Complaint as

[9] Fata also asserts a civil RICO claim based on the 2017 conspiracy. (Am. Compl. at 27.) In addition to being factually frivolous, Fata's RICO claims are legally baseless. RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"

factually baseless, without leave to amend. *See, e.g.*, *Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*) (dismissing appeal as lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Mina v. Chester County*, 679 F. App'x 192, 195 (3d Cir. 2017) (*per curiam*) (affirming dismissal of plaintiff's claims that 62 defendants had a vast conspiracy against him spanning twenty years); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic

---

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). "'Racketeering activity' is defined in the RICO statute to comprise the state law offenses of murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical, as well as several federal offenses such as mail and wire fraud." *Talley v. Halpern ex rel. Est. of Winderman*, No. 05-4184, 2005 WL 2002611, at *4 (E.D. Pa. Aug. 16, 2005) (citing 18 U.S.C. § 1961(1)). "According to the RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 363 (quoting 18 U.S.C. § 1961(5)). Additionally, a plaintiff must have sustained "injury to business or property" caused by the alleged RICO violation to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000). Fata does not allege any conduct that could be considered racketeering activity for purposes of setting forth a legal basis for a RICO claim. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("The claim that the defendants [including numerous judges, staff attorneys, and an assistant united states attorney] engaged in a RICO conspiracy by failing to properly address issues on appeal and 'bribing' witnesses to testify pursuant to plea agreements lacks any arguable basis in law and was properly dismissed as frivolous."); *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) ("[C]onclusory allegations that defendants conspired for the purpose of defrauding [Mierzwa] are simply inadequate to plead a valid RICO claim." (footnote omitted)). Fata's conclusory allegations that approximately forty individuals in at least two different states, many of whom are employed for different counties or private entities, conspired with an unidentified "Christian religious-based organization" for the purpose of suppressing evidence of child exploitation are inadequate to plead a valid RICO claim, or any other conspiracy claim.

groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Jorge v. Torres*, No. 18-14674, 2019 WL 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's factual allegations that the Police are monitoring his every move and that the Police do so by telephone recruitment 'of informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (alterations in original)).

There are additional reasons, however, as to why Fata's Amended Complaint cannot proceed. Fata asserts a claim under the TVPRA, specifically referencing 18 U.S.C. § 1595. (Am. Compl. at 27-28.) Fata's claim is not plausible. Although 18 U.S.C. § 1595 provides for a civil remedy for violations of the TVPRA, Fata fails to allege any facts suggesting that Defendants either forced him into labor, trafficked him for forced labor, or benefitted financially from peonage or forced labor.[10] *See Brown v. U.S. Dist. Ct. for E. Dist. of Pa.*, No. 18-1108, 2018 WL 11463543, at *3 (E.D. Pa. Apr. 19, 2018), *aff'd sub nom.*, *Brown v. City of Phila. Off. of Hum. Res.*, 735 F. App'x 55 (3d Cir. 2018).

As in prior cases, Fata asserts claims under 42 U.S.C. §§ 1985 and 1986. (Am. Compl. at 27, 28.) Because he avers that Defendants conspired with the intent to deny him "equal protection of the laws," he appears to assert a claim under 42 U.S.C. § 1985(3). (*Id.* at 27.) This section creates a cause of action against any two persons who "conspire . . . for the purpose of

[10] As a convicted inmate who was previously in custody for a parole violation, Fata also has no constitutional claim arising from forced labor while he was incarcerated. *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (holding that in the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work) (nonprecedential).

depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, the "language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).

Moreover, a plaintiff must allege specific facts to state a plausible § 1985(3) claim. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or

individuals."); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient."). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

These claims fail for several reasons. First, there is no allegation that a conspiracy was motivated by race or a class-based discriminatory animus as required by § 1985(3). Fata does not identify his race, nor does he make any allegation that race was the motivation behind the Defendants' alleged actions. Although Fata has previously emphasized his status as a *pro se* litigant, *pro se* status is not a protected class for purposes of stating a § 1985 claim. *See Finch v. Buechel*, No. 04-1856, 2005 WL 2807127, at *3 (W.D. Pa. Oct. 26, 2005) ("Regardless of which of these two subsections of § 1985 that she seeks to invoke, Finch cannot prevail on her claim because she only asserts "class-based invidious discrimination" as a *pro se* litigant."), *aff'd*, 188 F. App'x 139 (3d Cir. 2006); *Brik v. Brodie*, No. 23-4330, 2024 WL 1604194, at *6 (E.D.N.Y. Apr. 12, 2024) (collecting cases and stating that *pro se* status is not an "'immutable' quality beyond the class members' control"). Also, Fata asserts the existence of a conspiracy only in conclusory terms and provides no facts from which a conspiratorial agreement may be inferred. *Groce v. City of Phila. L. Dep't*, No. 21-5132, 2022 WL 493418, at *7 (E.D. Pa. Feb. 17, 2022) (dismissing conspiracy claim as wholly conclusory where the plaintiff failed to alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals, the period of the conspiracy, or actions taken by the alleged conspirators to achieve the alleged

purpose thereof). Fata's § 1985 claim is not plausible. The § 1986 claim also fails because § 1986 does not create an independent cause of action. *Black v. Bayer*, 672 F.2d 309, 312-13 n. 4 (3d Cir. 1982). Rather, § 1986 claims are derived from § 1985 claims, so that "plaintiff's § 1986 claim would fail with his § 1985 claim," if he has not stated a claim under Section 1985. *Id.*

Finally, Fata avers that Defendants "block[ed] court access." (Am. Compl. at 26.) This claim is not plausible. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' -- that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205-06 (footnote omitted and quoting *Christopher*, 536 U.S. at 416-17).

When reviewing a complaint to determine whether a plaintiff has alleged a plausible claim, a court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Fata does not allege that he suffered an actual injury, nor does he allege what underlying nonfrivolous claims he was unable to pursue as a result of any Defendant's actions. *See, e.g.*, *Monroe*, 536 F.3d at 206 (finding that plaintiffs' allegations that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the

claims were nonfrivolous" did not state a claim); *see also Walters v. Harry*, No. 25-3579, 2026 WL 1298057, at *1 (3d Cir. May 12, 2026) (*per curiam*) (affirming dismissal of access-to-courts claim where plaintiff failed to describe his underlying claim well enough to establish that it was "more than hope"); *Williams v. Sorber*, No. 24-2046, 2025 WL 1419716, at *4 (3d Cir. May 16, 2025) (*per curiam*) (affirming dismissal of First Amendment access-to-the-courts claim where plaintiff failed to "explain how access to the law library would have assisted in the preparation of his request to file a petition for allowance of appeal *nunc pro tunc*, nor did he identify why the underlying challenge to his sentence would have been successful" (citing *Monroe*, 536 F.3d at 205-06)); *Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) (*per curiam*) (affirming the dismissal of access to courts claim based on loss of plaintiff's legal property where plaintiff "did not allege any facts about the merits of his underlying claim" and did not "demonstrate that the loss of his legal materials, while unfortunate and inconvenient, has rendered him unable to seek the District Attorney's review"); *Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (affirming dismissal of access-to-the-courts claim where inmate, *inter alia*, failed to allege what underlying nonfrivolous claims he was unable to pursue).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Fata leave to proceed *in forma pauperis* and dismiss his Amended Complaint as frivolous. Leave to amend will not be given as any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile."). An appropriate order follows, dismissing this case in a final order pursuant to Fed. R. Civ. P. 58(a).